**UNITED STATES ex rel. Alfred J. ACKERMAN**

v.

**Frank C. JOHNSTON, Warden, Western State Penitentiary.**

**Civ. No. 13687.**

United States District Court
W. D. Pennsylvania.

Dec. 2, 1955.

Marjorie H. Matson, Pittsburgh, Pa., for relator, Alfred J. Ackerman.

James F. Malone, Jr., Dist. Atty., Wendell G. Freeland, Asst. Dist. Atty., Pittsburgh, Pa., Herbert B. Cohen, Atty. Gen., Frank P. Lawley, Jr., Deputy Atty. Gen., for respondent.

MARSH, District Judge.

The relator and respondent agree to the following findings of fact, which are adopted by the court:

1. Petitioner, Alfred J. Ackerman, is a citizen of the United States and a resident of the County of Allegheny, Commonwealth of Pennsylvania in this district.

2. At the time when these proceedings were instituted, petitioner was confined to the Western State Penitentiary in the custody of F. C. Johnston, Warden, as a state prisoner.

3. Petitioner was originally committed to the Allegheny County Jail on March 4, 1955, by the Court of Quarter Sessions of Allegheny County, Pennsylvania, by virtue of a judgment rendered January 8, 1954, at Nos. 162 May Sessions, 1953; 293 March Sessions, 1953; and Nos. 165, 130, 122, 41, 53, 62 and 105 May Sessions, 1953. The sentence imposed was a fine of 6¼ cents on each case and confinement in the Allegheny County Jail for a total period of two years.

4. Subsequent to petitioner's commitment to the Allegheny County Jail, a petition for Modification of Sentence was presented to the Court of Quarter Sessions, requesting defendant Ackerman's transfer from the Allegheny County Jail to a private hospital, by reason of his physical condition. After hearing, the said court transferred petitioner to the hospital of the Western State Penitentiary, the transfer having been made under the authority of the Act of May 31, 1919, P.L. 356, 61 P.S. §§ 81, 82.

5. Following petitioner's sentence at the above numbers and terms, appeals were taken to the Superior Court of Pennsylvania. Judgment of sentence was affirmed except as to the case at No. 293 March Term, 1953, by opinion reported in Com. v. Ackerman, 176 Pa. Super. 80, 106 A.2d 886. Thereafter application was made to the Supreme Court of Pennsylvania for leave to appeal from said decision, which application was refused without opinion. Application to the United States Supreme Court for certiorari was likewise refused without opinion on February 28, 1955, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743.

6. The printed record of the proceedings in the state courts was introduced in evidence in this proceeding pursuant to a stipulation by counsel for petitioner and the Assistant District Attorney waiving the requirement that the District Attorney produce certified copies of the original information and indictments upon which the prosecution was based.

7. Said record discloses that petitioner, Alfred J. Ackerman was tried in the Court of Quarter Sessions of Allegheny County, Pennsylvania, upon 80 separate indictments. A co-defendant, J. B. Bolden, was tried at the same time before the same jury on 26 separate indictments.

8. Defendant Ackerman was found guilty on 57 of said indictments and not guilty on 18. Demurrers were sustained to four of the indictments and in one case the jury failed to return a verdict and the District Attorney agreed to a nolle pros. Sentence was imposed on nine indictments and suspended upon the remaining 48 cases and defendant ordered to pay costs.

9. The 80 charges against defendant Ackerman which were consolidated for trial include the following: 30 charges of False Pretense; 8 charges of Extortion; 40 charges of Misdemeanor in Office; one charge of Conspiracy and one of Violation of the Motor Vehicle Code. Under Pennsylvania law, False Pretense is a felony. The other charges are misdemeanors.

10. Trial of the case extended from May 20th through May 29, 1953, the Commonwealth calling and recalling 108 witnesses and the defendants 22. Seventy pages of the total 1,424-page record are required for the charge of the court.

11. The 106 separate indictments against Alfred J. Ackerman and his co-defendant, grew out of approximately 37

892

separate fact situations which were presented to the jury by file numbers.

Discussion and Conclusions of Law.[1]

This petition alleges that relator's confinement resulted from a denial of due process and that he has exhausted the remedies available in the State courts.

The petition specified the facts constituting the denial of due process, viz.:

"a. Petitioner and co-defendant were tried jointly before the same jury on 106 separate indictments, despite objection that such consolidated trial effectively destroyed the presumption of innocence, prejudiced and confused the jury, and made a fair and impartial trial impossible * * * [and] that the consolidated trial of fifty felony cases and sixty-six misdemeanor charges [sic] is not authorized by any Pennsylvania statute and is contrary to well-established procedure of the common law.

"b. Such actual prejudice had been created against your Petitioner by pervasive pre-trial publicity as to necessarily prevent a fair trial. Petitioner is prepared to offer evidence to this effect upon hearing, and further to show that the prosecuting officials themselves deliberately instigated unfavorable publicity immediately prior to trial.

"c. The manner in which the trial was conducted prejudiced your Petitioner and made a fair and impartial trial impossible."

■ Since these allegations must be taken as true, a rule to show cause was issued. Massey v. Moore, 1954, 348 U.S. 105, 75 S.Ct. 145, 98 L.Ed. 135; United States ex rel. Darcy v. Handy, 3 Cir., 1953, 203 F.2d 407, 413.

The respondent moved to dismiss, averring that state remedies had not been exhausted, but on relator's representation that every federal issue had been decided by the trial court, reviewed by the Superior Court, allocatur refused by the Supreme Court of Pennsylvania and certiorari denied by the Supreme Court of the United States, a hearing was held so that the record made in the State courts could be secured for examination. Cf. United States ex rel. Darcy v. Handy, supra.

From the record submitted at the hearing, it appears that the required procedure for state review has been exhausted on the first ground set forth in the appeal from the conviction including certiorari to the Supreme Court of the United States.

■ As said in Brown v. Allen, 1953, 344 U.S. 443, 447, 73 S.Ct. 397, 402, 97 L.Ed. 469, "It is not necessary in such circumstances for the prisoner to ask the state for collateral relief, based on the same evidence and issues already decided by direct review with another petition for certiorari directed to this Court."

It was not so clear that the state remedies had been exhausted on the publicity question, but in order to determine this question, it was necessary to have the state record.

Likewise, to determine the consolidation question and the publicity question, if remedies were exhausted, in the light of the due process clause it was necessary to review the state record.

■ It is now well settled that a federal court cannot refuse to issue the writ simply because the state court had denied relief, but the federal court is required to exercise its independent judgment on the state record, Brown v. Allen, supra; United States ex rel. DeVita v. McCorkle, 3 Cir., 1954, 216 F.2d

1. Although no formal order was entered, the decision in this case was postponed until the determination of the bail question in the Court of Appeals upon the request of the respondent. See Transcript of argument of September 8, 1955, page 2. This bail question was decided by the Court of Appeals on November 30th of this year; Johnston v. Marsh, 3 Cir., 1955, 227 F.2d 528.

743, and decide issues of fact relating to fundamental fairness. United States ex rel. Thompson v. Dye, 3 Cir., 1953, 208 F.2d 565.

The state record received at the hearing proved to be both voluminous and complicated. However, I have examined it, read the briefs and heard oral argument. My conclusion is that the writ must be discharged.

The Superior Court of Pennsylvania gave fair consideration to the federal question of due process raised concerning the consolidation of multiple indictments and decided it against petitioner. Our conclusion is in accord.

█ Although cases may arise where the consolidation of indictments against two defendants is so prejudicial as to destroy the presumption of innocence, as relator argues, and to render the trial fundamentally unfair and therefore void as being without due process, this, we think, is not such a case. It is true that a certain amount of confusion developed during the trial and post trial, but the absence of all confusion is unattainable perfection, which is not the standard.

I entertain misgivings only in consolidating for trial the conspiracy, false pretense and extortion indictments against relator and his co-defendant, with the forty common law indictments of misdemeanor in office against relator and with a number of misdemeanor in office counts against his co-defendant.[2]

The misdemeanor in office indictments and counts evidently grew out of the same facts as the statutory offenses of false pretense, extortion and conspiracy to defraud (see charge to jury), but with additional elements to prevent merger under § 1104 of the Penal Code of June 24, 1939 P.L. 872, 18 P.S. § 5104. (See

Superior Court opinion and opinion of Court en banc denying motion to quash.) In the absence of all the indictments,[3] it is uncertain just what the alleged extra elements or facts were. But in the Commonwealth's brief in the Superior Court it is stated (page 3):

"The proofs of the Misdemeanor in Office, in addition to that showing the False Pretense or Extortion, consisted of varied types of misconduct, as making two informations when only one was proper or requested, by advising the signing of a criminal information where, in fact, the basis for the complaint was purely civil, and the filing of false affidavits as to the monies allegedly owing from the County on the transcripts to the Controller."

It is perfectly plain that as to the indictments for false pretense, extortion and the indictment for conspiracy, the various acts alleged exemplified a course of conduct and tended to prove intent which linked them together evidentially.

But is this true as to the indictments for misdemeanor in office with their various additional elements and facts? Notwithstanding my apprehension on this score, I am satisfied that they were closely related offenses and for the reasons set forth by Judge Hirt in the opinion of the Superior Court, their consolidation for trial was not a denial of due process. Cf. Ashe v. United States ex rel. Valotta, 1926, 270 U.S. 424, 46 S.Ct. 333, 70 L.Ed. 662.

█ About four days before the trial, a motion was made to continue because of prejudicial pre-trial publicity. Certain newspaper articles were submitted to the trial judge in support of this motion.[4] Apparently the motion was de-

---

**2.** The indictments against the co-defendant Bolden were not made a part of the record in this court, but a reading of the charge of the lower court to the jury discloses that Bolden was tried on approximately twenty-four counts of misdemeanor in office.

**3.** All the indictments against relator were

not submitted. See Finding 6 agreed upon by both parties.

**4.** In a newspaper story dealing with the recommendation of the Economy League to the state legislature of a seven-point reform program, reference was made to "Squire's Gimmicks" and "Padded Expense of Roving Constables". Squire Ackerman and Deputy Constable Bolden

nied as the trial was not continued. There is no doubt that the publicity was unfavorable to relator, but in my opinion, from the record, it did not attain that degree of prejudice which would render the trial void because lacking in fundamental fairness.

Moreover, the record indicates that as to the publicity question, state remedies were not exhausted.

Following conviction the publicity question was urged upon the court en banc as violative of the due process clause of the Constitution. But on appeal to the Superior Court, in the Statement of the Questions Involved,[5] there is no suggestion that this issue was involved. Although relator urges that the Superior Court considered the question because unfavorable publicity was mentioned in the "Conclusion" of relator's brief, it is noteworthy that the word "publicity" does not appear in the opinion of the Superior Court. The Court did conclude [176 Pa.Super. 80, 106 A. 2d 889]:

"There was no abuse of discretion in the consolidation of the cases for trial and there was no denial of due process on other grounds in these cases. The jurors were examined on their voir dire, and an impartial jury when sworn was seques-

tered, for their protection from outside influences."

Relator then petitioned the Supreme Court of Pennsylvania for an allocatur which was denied. This petition did not mention the pre-trial publicity as constituting a federal constitutional question.

In his application for certiorari to the Supreme Court of the United States he affirmatively avers that his constitutional rights were violated by the pre-trial publicity.

■ On this showing it is our conclusion that relator did not exhaust his state remedies on the publicity question. Assuming, without deciding, that the Superior Court considered and decided it, omitting to bring the matter to the attention of the Supreme Court of Pennsylvania is, I think, a fatal omission.

■ Finally relator urges that the manner in which the trial was conducted resulted in denial of due process. He argues that the proceedings "in the state courts were conducted with unseemly haste * * *"; the Bills of Particulars were inaccurately prepared; pre-trial motions were argued before the court en banc two days before the trial, and, while the motions were refused summarily, it was not until after trial that the opinion was filed, to relator's

---

were mentioned by name, as facing trial in criminal court "on multiple charges of operating a gigantic fee racket". This story appeared May 10, 1953. Three days later, on May 13th, the papers headlined the appearance in Harrisburg of District Attorney Malone of Allegheny County, under the caption "Law Makers Hear DA Rap Ackerman". The District Attorney denounced Ackerman as an "outstanding example of the evils of the roving constables' system", referred to his activities as "fee padding" and accused the Squire of soliciting business. By May 20th, when the jury was selected, the District Attorney and the Court were sufficiently aware of the publicity as to readily grant defendant's motion for an examination of the jurors on their voir dire. When request was made to sequester the jury for the duration of the trial, it was granted because of expected publicity.

5. "Rule 28. In all other appeals than those specified in Rule 27, the Brief of appellant shall consist of the following matters,—headed by the title thereof in distinctive type or in type distinctively displayed,—in the following order:
    (1) Statement of the Questions involved. * * *"
    "Rule 34. The statement of the questions involved must state the question or questions in the briefest and most general terms, without names, dates, amounts or particulars of any kind. It should not ordinarily exceed fifteen lines, must never exceed one page, and must always be printed on the first page of the Brief, without any other matter appearing thereon. This rule is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby."

prejudice; the trial was speeded up due to the imminence of Memorial Day; the jury was irritated by being sequestered; the jury was permitted to read newspapers with the trial articles cut out; the jury was confused as shown by its verdicts. It is evident from a mere reading of these allegations that most of them afford no basis for the issuance of a writ of habeas corpus. All of them were proper for consideration by the Superior Court on direct review of relator's conviction and no doubt were considered by that court.

Nor does the whole situation—all the facts alleged and argued—indicate that relator had an unfair trial or is confined in violation of any of his federal constitutional rights. I, therefore, find no basis in the state record which would justify the discharge of the prisoner. Accordingly, the writ of habeas corpus should be discharged and the relator remanded to the custody of Warden Frank C. Johnston.

The parties are requested to agree upon and submit the appropriate order to be entered within 10 days of the filing of this opinion.