**UNITED STATES of America ex rel. James E. KERN**

v.

**James F. MARONEY, Superintendent, State Correctional Institution, Pittsburgh, Pennsylvania.**

**Civ. A. No. 67–182.**

United States District Court
W. D. Pennsylvania.

Nov. 2, 1967.

---

436

---

Roger Curran, Pittsburgh, Pa., for petitioner.

Thomas P. Ruane, Jr., First Asst. Dist. Atty., Uniontown, Pa., for respondent.

## OPINION AND ORDER

MARSH, District Judge.

The relator, James E. Kern, has petitioned in forma pauperis for a writ of habeas corpus. In Fayette County, Pennsylvania, he was indicted for murder jointly with Robert E. Dillinger,—both pleaded guilty generally. Following the hearing to fix the degree of guilt, the court on April 17, 1964 found Kern guilty of murder in the first degree and Dillinger guilty of murder in the second degree. On the same day, Kern was sentenced to life imprisonment. No appeal was taken.

On May 18, 1966, Kern filed a petition in the state court under the Pennsylvania Post Conviction Hearing Act, alleging that he was "eligible for relief under this act because my conviction resulted from * * * [1] the introduction into evidence of a statement obtained in the absence of counsel at a time when representation is constitutionally required", and from "[2] the infringement of my privilege against self-incrimination under either federal or state law." He further alleged that he "was sentenced on a confession obtained when I should have had the aid of counsel."

On June 7, 1966, the sentencing judge by opinion and order dismissed the petition without a hearing. On July 27, 1966, Kern filed another petition in the state court under the Post Conviction Hearing Act requesting (1) that the order denying his petition be vacated, (2) leave to amend the petition, and (3) the right to appear in person. He requested the appointment of a lawyer "on appeal, if necessary * * *."

In addition to the allegations contained in the first petition, Kern alleged in the second petition that his conviction also resulted from: "[3] the introduction of evidence obtained pursuant to an unlawful arrest; [4] the introduction of a coerced confession into evidence; [5] the denial of my constitutional right to representation by competent counsel; [6] a plea of guilty unlawfully induced; [7] the unconstitutional use by the state of perjured testimony; [8] the abridgement of a right guaranteed by the constitution or laws of this state or the constitution or laws of the United States, including a right that was not recognized as existing at the time of the trial if the constitution requires retrospective application of that right."

As "facts" he alleges mostly conclusions, but in support of his allegation of involuntary plea he does assert that "the Court did not question me on the understanding of my plea of guilty nor the voluntariness of it." But see, Commonwealth ex rel. Kerekes v. Maroney, 423 Pa. 337, 342, 223 A.2d 699, 702 (1966).

The sentencing judge denied relator the right to amend this first petition on the ground that the additional allegations contained in the amendment were considered in his opinion denying the writ. This reason was accepted by the Supreme Court in affirming the Order of the lower court. Commonwealth ex rel. Kern v. Maroney, 423 Pa. 369, 223 A.2d 706 (1966).

On February 10, 1967, the relator filed a verified petition for the writ in this court alleging only conclusions of law, i. e., that he was denied his rights under the Fourth, Fifth, Sixth, Thirteenth and Fourteenth Amendments of the United States Constitution. However, from a lengthy verified annexation not artfully drawn, and a verified handwritten brief, supplemented by a brief of his appointed counsel, this court was of the opinion that relator had exhausted his state remedies on the allegations contained in his two state court petitions, and was entitled to an evidentiary hearing on the voluntariness of his plea of guilty. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963).

█ As stated in Commonwealth ex rel. Kerekes v. Maroney, supra, 423 Pa. at p. 342, 223 A.2d at p. 702 (1966):

"Before dismissing a petition which alleges the invalidity of a guilty plea, the habeas court must assure itself, by examining the record or *by holding a hearing*, that the decision to so plead was, at the time it was given, the defendant's own voluntary and intelligent choice, not merely the choice of his counsel." (Emphasis ours.)

█ In Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927), it was stated:

"Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."

*Voluntariness of Guilty Plea*

█ From the evidence adduced at the hearing in this court (hereinafter referred to as "Tr.") and the record in the state court (hereinafter referred to as "R."), we find as a fact that Kern's plea of guilty was competently, knowingly, and intelligently entered upon advice of counsel, without threat, promise or coercion of any sort. We also find that his written confession, although one of the factors, was not the primary inducing cause of the plea. Cf. United States v. Morin, 265 F.2d 241 (3d Cir. 1959). His codefendant's decision to plead guilty and the very real probability that at a trial he would testify for the Commonwealth, along with the strong circumstantial evidence of first degree murder, Kern's fear of a possible death penalty at the hands of a jury, and the considered advice of his counsel, combined to influence his decision in favor of a guilty plea. He was not induced to do so by his written confession.

█ Although the state record does not show the recommended inquiry by the trial judge of a defendant prior to accepting a guilty plea,[1] we find from the record in this court that prior to his plea, Kern did in fact know from explanation by his counsel (1) the nature and elements of felony murder, (2) the penalties involved, (3) the available defenses, (4) his right to a jury trial, (5) the possible consequences of a trial and a guilty plea, and (6) all the factors for and against a plea. The decision to plead guilty was that of Kern and was not the decision of his counsel. See testimony of relator's counsel, Tr., pp. 97–152.

We are aware that the details relating to Kern's other complaints, i. e., inadmissible confession and ineffective assistance of counsel, are relevant to the issue of whether the guilty plea was voluntary, and they are hereafter discussed. However, it may now be stated that we find the attacked confession voluntary and admissible in evidence, and that relator's two appointed lawyers were competent and gave the relator adequate advice.

---

1. Cf. United States ex rel. McDonald v. Commonwealth of Pennsylvania, 343 F. 2d 447 (3d Cir. 1965); Commonwealth ex rel. West v. Myers, 423 Pa. 1, 222 A. 2d 918 (1966). In Commonwealth ex rel. Kerekes v. Maroney, supra—opinion handed down the same day by the same Justice who decided Commonwealth ex rel. Kern v. Maroney, supra—*even though no inquiry was made by the trial judge* of the defendant's understanding of his guilty plea, the denial of the writ was affirmed.

Present counsel emphasized Kern's low intelligence quotient, truncated schooling (9th grade), and prior mental trouble. There was no averment of mental incapacity in the state court petition or in this court. Moreover, the finding of a sanity commission established that shortly before he pleaded guilty, he was not mentally ill. The record also shows that after dropping out of school, he had been accepted as a seaman by the United States Navy. At the time of his arrest he was married and employed by a hospital. It appeared to his counsel that he was rational, knew what was going on, knew the difference between right and wrong, was aware of the charges against him, what took place at the trial and "what we talked to him about" (Tr., p. 143). From his extensive writings in this case and his appearance and demeanor in this court, the relator does not appear to be mentally handicapped now by ignorance nor by mental disease, but seems to be possessed of normal comprehension of facts and an excellent memory.

■ Habeas corpus being a civil action, the relator had the burden of proving by a preponderance of the evidence that his guilty plea was involuntary. We find not only that he has failed to sustain this burden, but also that his guilty plea was voluntary. In our opinion, his petition for the writ should be denied.

### Relator Had Competent Counsel

■ Kern's complaint that his two appointed counsel were incompetent was not proved and is without merit. The two lawyers who represented him at the degree of guilt hearing had been appointed over two months prior thereto.[2] The Supreme Court in the first sentence of its opinion declared that Kern, as well as Dillinger, were represented by "competent counsel".

From the state court record and from the hearing in this court, we find as a fact that both appointed lawyers were competent and experienced. In the two-month period following their appointment, they adequately investigated the facts of the case, prepared it for trial, apprised Kern of the nature of the accusation against him, the defenses available, and his right to a jury trial. When codefendant Dillinger at his trial changed his plea from not guilty to guilty, they discussed with Kern and his mother the advisability of similar action. They advised him of the probability that Dillinger would testify against him at a jury trial; they discussed the possible effects of Kern's joint written confession;[3] they advised that his prior conviction of burglary and larceny with Dillinger was admissible in evidence for the consideration of the jury; and they told him of the possible results of a jury trial and of a guilty plea and the hazards involved in both.

After Kern decided to plead guilty and the plea was entered, his counsel conducted the degree-of-guilt hearing with skill, brought out all the facts relating to Kern's confession, and presented a meaningful summation to the court in mitigation of punishment. It is true they did not formally object to the admission in evidence of Kern's confession. This choice is completely understandable in the light of the law and the standards of the profession relative to confessions which prevailed prior to Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the fact that they knew the trial judge already was aware of the contents of the written confessions of both Dillinger and Kern (Tr., pp. 173–174).[4] Instead, they attempted skillfully

2. Relator was not represented by private counsel as inadvertently stated by the trial judge in his opinion.

3. Commonwealth Ex. 12, R., pp. 194–202.

4. It is customary for a judge to accept guilty pleas from joint defendants and

hear evidence concerning the degree of guilt and sentence of each. Since it is impossible to insulate information appropriate to one but not all defendants, the judge can be relied on to keep separate in his mind evidence which is legally appropriate to one and not the others,

to persuade the court by relator's testimony that his statement in which he admitted striking the victim once was not true, but that it was Dillinger who had assaulted the victim. That this strategy was unsuccessful is beside the point. In all respects they conducted the hearing on behalf of relator diligently, competently and skillfully. From the record it cannot be said that the hearing in the state court was a farce or a mockery of justice. Cf. Schaber v. Maxwell, 348 F.2d 664, 668 et seq. (6th Cir. 1965); In re Ernst's Petition, 294 F.2d 556 (3d Cir. 1961); Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707, 708 (1958); United States ex rel. Darcy v. Handy, 203 F.2d 407 (3d Cir. 1953); United States ex rel. Thompson v. Dye, 103 F.Supp. 776, 778 (W.D.Pa.1953), aff'd 203 F.2d 429 (3d Cir. 1953).

### The Written Confession

With respect to the allegedly inadmissible confession, we find from the state court record and the evidentiary hearing in this court (1) that it was voluntary, and (2) that relator waived his right to question any constitutional infirmity of his confession, if such there was.

The facts attending the vicious killing of the 80-year-old victim, perpetrated in the commission of a robbery on November 21, 1963, are set out in the opinion of the state court and need not be repeated. After Dillinger implicated himself and Kern in the robbery, the latter was taken into custody on November 27, 1963 at Columbia Hospital, Wilkinsburg, where he worked. He was placed in the Wilkinsburg jail overnight and removed the next day by the state police to Connellsville. He was permitted to telephone his wife. When his wife arrived at the police station, he voluntarily admitted orally to her in the presence of the police that he and Dillinger robbed a man (R., pp. 133–134). On the morning of November 29th, he orally admitted to the police that he struck the victim and robbed him (R., p. 174). Dillinger was not present when Kern made these two oral admissions. Later the same day, Kern and Dillinger jointly signed a confession wherein Kern admitted the robbery, striking the victim once, fleeing from the scene, and dividing the proceeds with Dillinger.[5]

The relator was arrested on probable cause. The manner in which he was interrogated was not coercive physically or mentally; his interrogation was not prolonged; he was fed and treated as any other prisoner. He did not request a lawyer. The only requests he made were to telephone and see his wife, which were promptly granted. He was not held incommunicado. He was not directly warned that he had the right to remain silent or that he was entitled to a lawyer as prescribed in Miranda v. State of Arizona, supra. No promises or threats were made to induce the oral admissions or the written joint confession, nor was he subjected to any force.

It is clear that relator suffered no constitutional deprivation with respect to his rights to counsel and to silence as set forth in Escobedo v. State of Illinois, supra, and Miranda v. State of Arizona, supra, for neither case is retroactively operative. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).[6] Pre-*Escobedo* and pre-*Miranda* case law on coerced confessions applies the "substantive test of voluntariness". See: Johnson v. State of New Jersey, supra; Davis v. State of North Carolina, 384 U.S. 737, 739–741, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966). Applying this test to Kern's oral and written confessions, from the totality of the surrounding circumstances including

---

and to put aside what he has heard if not legally relevant. Cf. United States ex rel. Bennett v. Myers, 381 F.2d 814 (3d Cir. 1967).

5. Kern's testimony at the hearing verified the joint confession in almost every particular except that he denied that he had personally struck and robbed the victim, but that Dillinger had done so.

6. Escobedo would not apply in any event. because no request was made to consult counsel.

the failure to advise him of his right to remain silent and his right to counsel, the record demonstrates conclusively that his will was not overborn and that the confessions, oral and written, were not extracted by unconstitutional practices such as violence, force, coercion, duress, continuous interrogation without opportunity to rest, or keeping him incommunicado. They were entirely voluntary and admissible.

The relator contends that his written confession was procured by trickery, fraud and deception. It appears that on November 29th the police led him to believe that he was to be charged with robbery and assault, but prior to his signing the joint confession, they did not tell him that the victim had died. The police knew that fact and intentionally concealed it; however, it is quite doubtful that they were aware of the cause of death. The victim had been severely beaten by more than one blow, strangled and stomped on, but he died in the hospital from a cerebral hemorrhage. It was medical opinion at the hearing which established that the injuries sustained during the robbery were the cause of the fatal stroke and death.

In ferreting out the details of a crime, the police are not required to particularize the specific consequences to the victim, or to speculate as to the ultimate charge, the latter being the function of the prosecutor and the grand jury. If withholding the information that the victim had died of a stroke be trickery, fraud or deception, such trickery or deception standing alone would not vitiate the written confession as unconstitutionally obtained. Commonwealth v. Graham, 408 Pa. 155, 163, 182 A.2d 727, 731 (1962); Commonwealth v. Johnson, 372 Pa. 266, 272–273, 93 A.2d 691, 694–695 (1953); 23 C.J.S. Criminal Law § 827. Cf. United States ex rel. Everett v. Murphy, 329 F.2d 68, 70 (2d Cir. 1964); United States ex rel. Caminito v. Murphy, 222 F.2d 698, 700 (2d Cir. 1955).

Since Kern was not subjected to unconstitutional practices, the failure to inform him that his victim was dead does not, standing alone, render his otherwise voluntary written confession unconstitutionally obtained. If the written confession was not unconstitutionally obtained, but obtained solely by deception, it was admissible in evidence, especially in absence of an objection.

In the same vein, Kern contends that he was tricked into making the joint written confession, after he had recanted striking the victim, when the police stated: " 'It makes no difference who hit the man, you are both equally guilty'." (Tr., p. 37; see also, R., pp. 215, 230, 235.) We think the observation is accurate and was not coercive in any respect. As stated, relator previously had orally admitted striking and robbing the victim. It is well settled that when two combine and intend to commit robbery or commit a battery resulting in grievous bodily harm or death, the one who does not personally commit the wrongful acts is criminally responsible. Each is an aider and abettor of the other and equally guilty. 18 Purdon's Pa.Stat.Ann. § 4701; Commonwealth v. De Moss, 401 Pa. 395, 165 A.2d 14 (1960); Commonwealth v. Micuso, 273 Pa. 474, 117 A. 211 (1922); United States ex rel. Almeida v. Baldi, 195 F.2d 815, 33 A.L.R.2d 1407 (3d Cir. 1952).

The relator testified in the state court hearing and in this court that he would not have signed the written confession had he known the victim was dead. This is mere speculation. He had admitted the assault and robbery orally before the death of the victim.

He also testified it was because of his fear of Dillinger that he admitted in the written confession that he had hit the victim. Evidently, the state courts gave no credence to this statement as affecting the voluntariness of the confession, nor do we.

All the facts and circumstances surrounding the written confession were heard by the experienced trial judge and were in the record before the Supreme Court. Both courts agree with our conclusion that applying the substan-

tive test of voluntariness under all the facts and circumstances, the written confession was voluntarily given.

 After a full, fair and adequate hearing at which all the facts have been brought out, the determination .of the state courts that the written confession was voluntary is presumptively correct. Townsend v. Sain, supra; United States ex rel. Boyd v. Botula, 269 F.Supp. 916 (W.D.Pa.1967); 28 U.S.C. § 2254, as amended, Public Law 89–711, November 2, 1966, 80 Stat. 1105.

Relator relies on Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); and United States ex rel. Cuevas v. Rundle, 258 F.Supp. 647 (E.D.Pa.1966). The unusual and unique facts in those cases, however, distinguish them from the facts found in the instant case.

 Even if the confession were held to be invountary, we think the right to question its constitutional infirmity was waived by Kern and his counsel (Tr., pp. 125, 131–132, 141–142). It appears they intentionally relinquished any claim of coerced confession. Cf. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). His counsel knew that timely objection to the admission of the confession is required by Pennsylvania procedure. "This procedure * * * is vital to the orderly administration of a criminal trial and clearly serves a legitimate state interest." Commonwealth ex rel. Fox v. Maroney, 417 Pa. 308, 313, 207 A.2d 810, 812 (1965).[7] An objection gives the court the opportunity to conduct the trial without using the tainted confession. Since the enforcement of the procedural rule serves a legitimate state interest, the knowing failure to object waived Kern's right to raise the unconstitutional infirmity of his confession. Henry v. State of Mississippi, 379 U.S. 443, 448, 85 S.Ct. 564, 13 L.Ed. 2d 408 (1965); United States ex rel. Gockley v. Myers, 378 F.2d 398 (3d Cir. 1967).

### Right to Appeal

In his petition in this federal court, relator for the first time alleged that his counsel did not inform him of his right to appeal and that he lacked knowledge thereof. (See federal petition, pp. 9–10.) After Kern was sentenced to life imprisonment, his mother, being dissatisfied, informed his counsel that she was going to obtain other counsel to take an appeal (Tr., pp. 149, 170). For some reason, an appeal was not taken, and considerable doubt exists that in the circumstances of this case it would have met with success. Cf. Commonwealth ex rel. Booker v. Duggan, 424 Pa. 394, 403, 227 A.2d 168, 174 (1967).

 Moreover, this ground raised in support of the writ was not presented to or passed upon by the state courts. Thus, as to this ground the relator has not exhausted his state remedies, and it may not be considered initially by this federal court. United States ex rel. Anderson v. Cavell, 148 F.Supp. 681, 685 (W.D.Pa.1957), aff'd 249 F.2d 656 (3d Cir. 1957); United States ex rel. Ackerman v. Johnston, 139 F.Supp. 890 (W.D.Pa.1955), aff'd 235 F.2d 958 (3d Cir. 1956).

This court hereby expresses its appreciation for the considerable time and effort expended by Roger Curran, Esq., in preparation for and participation in

7. See also, Commonwealth ex rel. Booker v. Duggan, 424 Pa. 394, 400, 227 A.2d 168, 172 (1967); Commonwealth ex rel. Foeman v. Maroney, 420 Pa. 486, 218 A.2d 230 (1966); Commonwealth ex rel. Swilley v. Maroney, 420 Pa. 419, 218 A.2d 242 (1966); Commonwealth ex rel. Blackshear v. Myers, 419 Pa. 151, 213 A.2d 378 (1965); Commonwealth ex rel. Taylor v. Maroney, 419 Pa. 149, 213 A. 2d 355 (1965); Commonwealth ex rel. Sanders v. Maroney, 417 Pa. 380, 207 A.2d 789 (1965).

the evidentiary hearing and oral arguments, as well as for the excellent briefs presented in willing response to the request for gratuitous service in behalf of the relator.