**UNITED STATES of America, ex rel. William Fairfax WASHINGTON, C–5501, Petitioner,**

**v.**

**James F. MARONEY, Superintendent State Correctional Institution, Pittsburgh, Pennsylvania, Respondent.**

**Civ. A. No. 68–683.**

United States District Court
W. D. Pennsylvania.

Oct. 18, 1968.

Carl A. Eck, Pittsburgh, Pa., for petitioner.

Louis Abromson, Asst. Dist. Atty., Pittsburgh, Pa., for respondent.

## OPINION AND ORDER

MARSH, District Judge.

In his petition for a writ of habeas corpus, the relator, William F. Washington, challenges the validity of his present confinement in the State Correctional Institution at Pittsburgh, Pennsylvania. In 1959 in the Criminal Court of Allegheny County, at a non-jury trial, he was convicted of four counts of armed robbery, one count of burglary, and three counts of aggravated assault and battery.[1] He received four concurrent sentences of 10 to 20 years on the robbery indictments,[2] one consecutive sentence of 2½ to 5 years on the burglary indictment. Sentence was suspended on the aggravated assault and battery indictments "on payment of costs of prosecution by reason of sentence imposed at" a robbery indictment.

The grounds on which relator seeks relief are: (1) denial of effective and adequate representation by counsel; (2) coerced confession admitted into evidence at trial; (3) his Legal Aid attorney would not file an appeal; and (4) adverse ruling of the Pennsylvania Supreme Court.

In our opinion, the petition for the writ should be denied.

It seems certain that relator is not entitled to relief on ground 2. The Pennsylvania Supreme Court va-

---

1. The robbery indictments were at Nos. 106, 107, 111 and 112 O. & T. November Sessions, 1959; the burglary indictment was at No. 108 O. & T. November Sessions, 1959; the assault and battery charges were at Nos. 352, 353, and 362 Q.S. November Sessions, 1959.

2. His codefendant, Alvin Dixon, who pleaded guilty and testified against relator, received the same sentences on the robbery charges from the trial judge. William Balser, separately indicted, who pleaded guilty to three of the robbery charges and also testified against relator, was sentenced to 2½ to 5 years by another judge. (T., p. 150.)

cated the conviction and sentence on the burglary indictment resulting from the use of the alleged coerced confession and granted a new trial. Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967). On ground 3, the alleged failure of relator's counsel to take an appeal after being requested to do so by relator is being raised for the first time. On this ground his state remedies have not been exhausted. United States ex rel. Gordon v. Myers, 371 F.2d 540 (3d Cir. 1967); United States ex rel. Ackerman v. Johnston, 139 F. Supp. 890, 894 (W.D.Pa.1955), aff'd 235 F.2d 958 (3d Cir. 1956).

■ Ground 4 affords relator no basis for relief; it is not the function of a District Court to determine whether the Pennsylvania Supreme Court may have erred in reaching its conclusions. Cf. United States ex. rel. Almeida v. Rundle, 383 F.2d 421, 426 (3d Cir. 1967).

The first ground is the only one pressed by relator at the hearing in this court. It was the main ground pressed in the State habeas hearing (State habeas Tr., pp. 4–6). As factual support he averred in his petition that he saw counsel "one minute" before the commencement of trial. At the hearing in this court he testified "one moment" (T., pp. 31, 38, 51, 63), explaining he meant "one minute" (T., p. 39). In his State habeas petition, he stated several times that his attorney had only a "few minutes" to discuss the case with him.

Relator's testimony in this respect is incredible.

The relator had no recollection of the details of the two meetings with the investigator in the county jail (T., pp. 55–56, 58–63, 66–68; State habeas Tr., pp. 68–78, 80–84, 86). His recollection of the events preceding his trial is so utterly dim that we find as a fact that he does not accurately recall how long he discussed his defense with his trial lawyer. He signed a "Waiver of Trial by Jury" which together with explanation thereof, alone, would have taken five or ten minutes (T., p. 108).

Although trial counsel, supplied at the expense of the United Fund, had no recollection of the length of time he had to prepare for trial and discuss the case with relator, his practice in Legal Aid cases was to try them as he did his own cases (T., pp. 133, 144), read the investigator's report, interview the accused, and advise him whether or not to waive a jury trial. If he followed his practice, he would have spent more than one-half hour in preparation (T., p. 108).

On November 27, 1967, the Legal Aid Society, a United Fund organization (T., p. 91), undertook to aid relator. Since the trial was held on December 10, 1957, this is not a case of hasty or late appointment of a defense lawyer by a court. There is no record that the Legal Aid attorney who tried the case was appointed by the Court. None of the State Court judges mention that relator's trial counsel was court-appointed. Ordinarily, cases are referred to Legal Aid by a court clerk or taken on application of an indigent prisoner (T., pp. 92, 117).

The evidence discloses that Legal Aid undertook and began an investigation of relator's cases 13 days before trial. Relator was interviewed by an experienced social worker employee of the Society on two occasions (T., p. 51). She made notes on the forms utilized for trial preparation (Ex. 4). They set forth relator's biographical data; the facts of the alleged crimes; and that relator desired a jury trial because he "wants to make pros. prove their case". They further set forth the date of trial, date of arrest, the charges, names and ages of his codefendants, Alvin Dixon and William Balser, names of their attorneys, and the names of the victims. The notes stated that relator had no defense witnesses; that he had a prior record; that he had signed a statement as to the burglary charge "because pros. wore him out—wishes to retract"; and that codefendants confessed and pleaded guilty to the robberies, but not to the burglaries. The facts of apprehension were quoted from a newspaper clipping.

The investigator notified relator's parents of the trial date and that they should retain private counsel and obtain character witnesses. Obviously, she believed that relator's stepfather, who was "head chef" at a well-known restaurant, could afford such counsel. However, the parents made no efforts to secure private counsel or character witnesses (State habeas Tr., pp. 35, 37).

A brief examination of the investigator's report would indicate to any experienced attorney that relator's defense was extremely weak; that he had no witnesses; and that his associates pleaded guilty and would likely implicate him. Both testified against him.

At trial relator was given full opportunity to tell his story. It is not surprising that the trial judge declined to believe his excessively implausible tale. The evidence against the relator, including his own bizarre story, is overwhelming. Days of preparation by his attorney could hardly have improved his defense to the robberies.

The evidence adduced at the State habeas hearing fully supports the findings and conclusions of the hearing judge to the effect that the relator was adequately and effectively represented by competent counsel, except with respect to his coerced confession to the burglary. The Superior Court affirmed per curiam. In a scholarly and exhaustive opinion, the Supreme Court affirmed, but granted a new trial on the burglary indictment. Except for the subsequent opinion in United States ex rel. Mathis v. Rundle, 394 F.2d 748 (3d Cir. 1968), an evidentiary hearing in this court would have been unnecessary. United States ex rel. Tillery v. Cavell, 294 F.2d 12, 23–24 (3d Cir. 1961).

In *Mathis*, supra, 394 F.2d p. 753, it was ruled:

"Should the trial court fail to appoint counsel sufficiently in advance of trial to prepare defendant's case in a reasonably thorough manner, and should defendant on collateral attack establish a prima facie case that the hasty appointment of legal assistance may have been inherently prejudicial to his trial by precluding him from the advantage of an adequately prepared defense, then it follows logically that the state should bear the brunt of rebutting the presumption of injury inherent in its skimpy compliance with the sixth amendment command."

The facts in that case appear to be more strongly in favor of Mathis than the facts in the case sub judice are to the relator. There, the voluntary defender was appointed to represent the relator on the eve of trial. The defender did not have an opportunity to interview Mathis but did have access to the notes of a colleague who had previously conducted an interview. In addition, trial counsel spent about a half-hour with witnesses in the courtroom just before the trial. Several putative eyewitnesses to the stabbing in question failed to appear at the trial. As we read the opinion of the Court of Appeals, these facts were sufficient to establish a prima facie case of ineffective assistance of counsel. The Court of Appeals found, however, that the testimony of counsel at the habeas corpus hearing rebutted the relator's prima facie case. This finding was based on the testimony of counsel that he had "no reasonable expectation" that the absent witnesses would aid in Mathis' defense. Furthermore, he was "unable to say that he had been insufficiently prepared to go to trial."

As in *Mathis*, from the record of the State habeas hearing and from the evidentiary hearing in this court, we are unable to perceive an unrebutted prima facie denial of relator's right to the effective assistance of counsel. The case sub judice was more strongly rebutted than in *Mathis*, for here the relator had no witnesses, and the testimony of his trial counsel affirmatively established that from the record of the trial he was familiar with the law of the cases as it applied to the facts (T., p. 104); that he was satisfied that he had done all that could be done for relator (T., p. 111). At the State habeas hearing, the trial

attorney testified that from the investigator's report he knew relator's defense before he went to trial; that he was satisfied that he was familiar with the facts of the cases before trial; and that he exercised his best efforts in relator's behalf (State habeas Tr., pp. 93, 94, 101–102).

It is true that the trial attorney made one mistake[3] in not objecting to relator's "coerced" confession to the burglary charge, but that mistake has been corrected by the Pennsylvania Supreme Court. In cases where incompetency has been found, invariably the finding was based on a combination rather than a single mistake by the attorney. Jones v. Cunningham, 297 F.2d 851, 855 (4th Cir. 1962). As demonstrated by the Pennsylvania Supreme Court, Commonwealth ex rel. Washington v. Maroney, supra, 427 Pa. at p. 609, 235 A.2d at p. 355, as to the robbery charges, there were reasonable bases to support counsel's failure to investigate possible witnesses and impeach the testimony of Balser who testified against relator;[4] that these asserted errors "are not sufficient to support a conclusion that counsel's representation did not comport with constitutional mandates". Counsel's failure to move for a severance in the circumstances was certainly a matter of discretion and strategy (T., p. 115).

■ The evidence and circumstances disclose that the investigator's notes provided sufficient information so that the trial attorney could familiarize himself with the accusations and defenses; that the trial attorney had access and used the investigator's report; and that he sufficiently discussed the cases with the relator before the trial. There were two interviews prior to the day of trial; the investigator's report provided the experienced trial attorney with sufficient information in advance of trial to ma-

terially reduce the time required for a meaningful consultation with relator. Thus, we do not think that this is a case where a late appointment of counsel is "inherently prejudicial"; it is not a case where hasty preparation deprived relator of his defenses to the robbery charges, or the presence of witnesses otherwise available, for relator had none. Therefore, we conclude that in all the circumstances, the Commonwealth by strong affirmative proof has rebutted any presumption of harm which may have resulted because the trial attorney did not contact relator until the day of the trial.

■■ We find from the trial transcript that relator did in fact receive the effective aid and assistance of counsel as to the robbery charges. Perfection is not required. Success is not required. In the light of the overwhelming evidence against him, there was very little trial counsel could do, except make the Commonwealth prove its case as relator desired (Ex. 4). It is difficult to believe that character witnesses, if any there were, would have been of any help.[5] Counsel was experienced, having tried 400 or 500 cases up to the time of the 1959 trial (T., pp. 88–89).

Certainly the trial attorney's representation was not so lacking in competence that it became the duty of the court or the prosecution to observe and correct it. In re Ernst's Petition, 294 F.2d 556, 558 (3d Cir. 1961); United States ex rel. Darcy v. Handy, 203 F.2d 407, 427 (3d Cir. 1953); Diggs v. Welch, 80 U.S. App.D.C. 5, 148 F.2d 667, 670 (1945). The attorney's defense of relator does not appear to have been a pretense or a farce. The trial judge and District Attorney could not have labeled the defense as a false show, nor can we now do so with any degree of certainty. The trial as a whole cannot be characterized as a

---

3. The investigator's report revealed that the relator signed a statement to the police because "pros. wore him out" and relator wished to retract it (Ex. 4).

4. The trial judge certainly was very much aware that Balser had participated in

three of the robberies. Balser's prior record would not likely have produced any effective additional impeachment of his credibility (Trial Tr., pp. 33–39).

5. At the hearing, relator could not name any character witness (T., p. 70).

farce or mockery of justice. See: Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936); In re Ernst's Petition, supra; United States ex rel. Darcy v. Handy, supra; Diggs v. Welch, supra; United States ex rel. Thompson v. Dye, 103 F.Supp. 776, 778 (W.D.Pa.1952), aff'd 203 F.2d 429 (3d Cir. 1953).

■ An accusation of ineffective assistance by defense counsel is easily made after conviction and after the lapse of many years. To many a criminal upon conviction, his attorney has not rendered competent and effective assistance, regardless of the evidence against him. Viewing the record of the trial and both habeas corpus hearings as a whole, it is our conclusion that the Commonwealth has rebutted any presumption of harm that may have arisen from the efforts of the Legal Aid Society, by its investigator and trial attorney, to render aid and assistance to the relator.

An appropriate order will be entered.

We extend our sincere thanks to Carl A. Eck, Esq., and Richard J. Mills, Esq. for the extensive time and effort they have devoted gratuitously in preparing for and representing the relator at the habeas corpus hearing and preparing an exhaustive brief.