Argued August 24, affirmed October 8, petition for
rehearing denied November 1, 1973, petition
for review denied January 3, 1974

STATE OF OREGON, *Respondent, v.* WALLACE
LEE BENEPE (No. C-72-11-3492 Cr.), *Appellant.*

514 P2d 556

*J. Marvin Kuhn,* Deputy Public Defender, Salem,
argued the cause for appellant. With him on the brief
was Gary D. Babcock, Public Defender, Salem.

*John W. Osburn,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before LANGTRY, Presiding Judge, and FORT and THORNTON, Judges.

FORT, J.

Defendant, indicted for manslaughter (ORS 163.-125), was convicted by a jury of the lesser included crime of criminally negligent homicide (ORS 163.195). He appeals, assigning as sole error the denial of his motion to suppress evidence of statements made by him to a police officer and the results of a test of his blood obtained from him after the motor vehicle accident, out of which this prosecution arose.

The defendant claims the evidence in question was obtained in violation of his *Miranda*[1] rights. He does not contend that he was not given the warnings required by that case, except in one particular.

At the time he consented to the taking of his blood and also talked with the police after he had received his *Miranda* warnings, he was not aware that Mr. Hartman, whose death led to the filing of this charge, had been killed in the accident. He contends that the police were aware of this at the time he received the warnings required by *Miranda* and failed to inform him of this fact. He contends that had he been so advised, he would have made no statements to the police. He testified, however, that he would have consented to the drawing of his blood even though he had known Mr. Hartman was dead. Without this in-

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

formation, however, he contends that his admittedly otherwise valid waiver of his rights was nevertheless ineffective because it was not "voluntary." In essence, therefore, if we understand his position correctly, he contends that for a waiver of rights to be effective, the defendant must be aware of the specific crime concerning which he is a focal suspect. Here the defendant concedes that he was aware he was suspected of having committed the crime of driving a motor vehicle while under the influence of intoxicating liquor.[2] He had not, however, been arrested. He had been taken to the hospital from which, after a checkup, he was about to be released at the time he gave his consent to the taking of the blood sample and made the challenged statements.

The Supreme Court of the United States recently in *Schneckloth v. Bustamonte,* 412 US 218, 93 S Ct 2041, 36 L Ed 2d 854 (1973) considered at length the meaning of "voluntariness" in connection with a consent given by a driver of a motor vehicle to a police search of the vehicle when stopped for a traffic offense. The defendant there contended that the driver was unaware that he had a right to refuse consent to the search, and that his consent was, therefore, not voluntary. It was conceded that the driver was not told by the police, when they sought and secured his consent, that he had a right to refuse. The Ninth Circuit Court of Appeals had held that the state must show that a defendant knew he had a right to deny the request of the police to search before the consent could be considered voluntary. *Bustamonte v. Schneckloth,* 448 F2d 699 (9th Cir 1971).

---

[2] Here defendant was seated behind the wheel of his car which was stopped in the highway at the scene of the collision with another vehicle when the police arrived. Mr. Hartman was an occupant of the other vehicle.

The Supreme Court reversed. In the course of its lengthy analysis, it held:

"* * * [T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. * * *" 412 US at 227.

Concerning *Miranda,* the court said:

"Much of what has already been said disposes of the argument that the Court's decision in the *Miranda* case requires the conclusion that knowledge of a right to refuse is an indispensable element of a valid consent. * * *

"* * * *Miranda,* of course, did not reach investigative questioning of a person not in custody, which is most directly analogous to the situation of a consent search, and it assuredly did not indicate that such questioning ought to be deemed inherently coercive. * * *" 412 US at 246-47.

In *State v. Davidson,* 252 Or 617, 451 P2d 481 (1969), the defendant contended that statements made by him after receipt of the required warnings and following his arrest on one charge were inadmissible against him when he was subsequently charged with a different crime. The court said:

"The warning given to defendant was not limited to any specific unlawful conduct, nor do we know of any reason which requires it to be so limited, considering the purpose of the *Miranda* rule. Neither was the length of time between warning and admission sufficient to require a new warning." 252 Or at 620.

There is no Oregon case dealing expressly with the effect of withholding from the defendant facts known to the police at the time of an otherwise voluntary waiver of rights. Examination of other authorities, however, is helpful.

In *United States v. Maroney,* 275 F Supp 435 (WD Pa 1967), the petitioner had admitted striking and robbing the victim, unaware that the victim had died. The petitioner's statements were held properly admitted:

"In ferreting out the details of the crime, the police are not required to particularize the specific consequences to the victim, or to speculate as to the ultimate charge \* \* \*" 275 F Supp at 441.

In *Castro v. Klinger,* 373 F2d 847 (9th Cir 1967), the court said:

"Next, appellant alleges that he made the incriminating statements because the interrogating officers 'led petitioner into believing that his victim was still alive. Knowing all the time during the interrogation that the victim had been dead for three days.' He contends that the concealment by the officers of the fact that 'his victim' had died amounted to the exertion of 'psychological force' which is constitutionally forbidden. There is no allegation that the officers were guilty of affirmative deception, and it is difficult for us to perceive a reason as to why the incriminating statements may have been less voluntary merely because of Castro's mistaken assumption that 'his victim' had not died from the injuries which he had inflicted. Even if there is an obscure reason which is not defined in the allegations, the interrogating officers did not, by the mere failure to divulge information within their knowledge, infringe on rights conferred upon Castro by federal law. This follows, a fortiori, from our decision in Pembrook v. Wilson, 370 F2d 37 (9th Cir 1966). There, we wrote,

" 'Pembrook also alleged that he was subjected to "psychological" coercion in connection with his giving of incriminating statements. This type of coercion allegedly resulted when his police interrogators, knowing that the victim was dead and suspecting that Pembrook was

.the murderer, led Pembrook to believe only that the victim had been taken to the hospital. In our opinion, proof of this alleged misrepresentation would not, of itself, establish that the incriminating statements were obtained by psychological coercion in the constitutional sense.' 370 F2d at 40 n. 7." 373 F2d at 849.

*See also: State v. Wilbur,* 186 Neb 306, 182 NW2d 906 (1971).

■ The rule contended for here by the defendant would seem, by implication, to require, in addition to the giving of the *Miranda* warning, that the police, before questioning a suspect, should reveal to him all of the material facts relating to the offense then known to them. We know of no authority which would support such a rule. Additionally, it would also logically seem to require that the police advise the suspect of every crime that the then-known facts might appear to support. We reject both. The motion to suppress was properly denied.

Affirmed.