**Robert Dewey GLOCK, II, Petitioner,**

v.

**Richard L. DUGGER, Respondent.**

**No. 89–54–CIV–T–17.**

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 12, 1990.

Martin J. McClain, K. Leslie Delk, Office of the Capital Collateral Representative, Tallahassee, Fla., for petitioner.

Robert J. Landry, Asst. Atty. Gen., Dept. of Legal Affairs, Tampa, Fla., for respondent.

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

KOVACHEVICH, District Judge.

This cause of action is before the Court on Petitioner Robert Dewey Glock's Petition for Writ of Habeas Corpus filed on January 3, 1989, pursuant to 28 U.S.C. § 2254; Petitioner's Motion for Evidentiary Hearing; Respondent Dugger's Response; and both parties Motions to Alter and Amend Judgment.

The Motions to Alter and Amend Judgment are granted. The issues contained therein are resolved by the discussion below. The Petition raises the following grounds.

1. The admission of codefendant's confession and statements from the codefendant's joint confession violated *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987);

2. The trial court erred in not granting a severance at either phase of the proceedings, trial or guilt;

3. Glock's counsel was ineffective at the guilt and penalty phases of the trial;

4. The trial court unconstitutionally shifted the burden in its instruction concerning sentencing and its imposition of the sentence;

5. The mental health experts rendered professionally inadequate evaluations resulting in an unreliable sentencing determination;

6. Evidence of the victim's character and victim's impact evidence were improperly considered by the jury and the court;

7. The trial court erred in permitting the prosecutor to state during closing argument, at the guilt phase, that premeditation was presumed under the felony murder theory;

8. The jury instructions and prosecutor's comments violated *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985); *Adams v. Dugger*, 816 F.2d 1493 (11th Cir. 1987), *cert. granted*, 485 U.S. 933, 108 S.Ct. 1106, 99 L.Ed.2d 267 (1988); and *Mann v. Dugger*, 844 F.2d 1446 (11th Cir.), *petition for cert. denied*, 489 U.S. 1071, 109 S.Ct. 1353, 103 L.Ed.2d 821 (1988);

9. The jury was misled by the sentencing instructions;

10. The trial court erred in refusing to provide instructions necessary to guide the jury's in assessing the aggravating factors;

11. The prosecutor violated the golden rule during his opening statement and made an inflammatory remark during closing argument;

12. Glock's emotional dependency precluded him from knowingly and intelligently waiving his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966);

13. Glock was prejudiced by the joint sentencing and order;

14. The trial court failed to realize mitigating circumstances in the record;

15. The instructions on felony murder violated Glock's constitutional rights;

16. The trial judge erred in refusing to provide the jury with the defense's requested instructions concerning mitigating factors; and

17. Glock was denied the effective assistance of counsel on direct appeal to the Florida Supreme Court.

## FACTS

The Court finds it appropriate to quote the following material facts, taken from the trial record, as set forth by the Florida Supreme Court in *Puiatti v. State*, 495 So.2d 128 (Fla.1986):

[O]n August 16, 1983 the woman victim arrived at a Bradenton shopping mall. As she exited her automobile, Puiatti and Glock confronted her, forced her back inside the car, and drove away with her. They took $50 from her purse and coerced her into cashing a $100 check at her bank. They then took the victim to an orange grove outside Dade City where they took the woman's wedding ring and abandoned her at the roadside. After traveling a short distance, the appellants determined that the woman should be killed, and they returned in the car to her. When the car's window came adjacent to the woman, Puiatti shot her twice. The appellants drove away, but, when they saw she was still standing, they drove by the victim again and Glock shot her. When the woman did not fall, the appellants made a third pass with the automobile, Glock shot her another time, and the woman collapsed.

Four days later, a New Jersey state trooper stopped the victim's vehicle because its license plate was improperly displayed. Puiatti and Glock occupied the automobile. When neither appellant could present a valid driver's license, the officer requested the car's registration. As Puiatti opened the glove box, the trooper saw a handgun. The officer seized that handgun, searched the vehicle, and uncovered another handgun. He then arrested both men for posses-

sion of handguns without permits. The police later identified the handgun from the glove box as the murder weapon.

The next day Puiatti and Glock individually confessed to the kidnapping, robbery, and killing. These initial confessions varied only to the extent that each blamed the other as instigator of the killing and each offered a different sequence of who fired the shots at the victim. Each confessor admitted that he had fired shots at the victim. Three days later, on August 24, Puiatti and Glock gave a joint statement concerning their involvement in the murder. In this joint confession, the appellants resolved the inconsistencies in their prior statements: they agreed that Glock initially suggested shooting the victim and that Puiatti fired the first shots and Glock fired the final shots.

Before trial, both appellants moved to sever their trials on the grounds that the state intended to introduce each appellant's individual confession. The trial court denied their motions. At trial, neither appellant testified in his own behalf, and the three confessions—the two individual confessions and the joint confession—were admitted into evidence. The appellants objected only to the introduction of the individual confessions. The trial court overruled appellants' objections, but, before admitting each individual statement, the trial court admonished the jury to disregard each defendant's individual confession as it tended to implicate the other.[1]

The jury found each appellant guilty of first-degree murder, kidnapping, and robbery. In the penalty phase, Puiatti waived any reliance on the mitigating factor of no significant prior criminal history, but offered psychiatric testimony indicating he was under Glock's substantial domination. Glock claimed the application of the mitigating factor of no significant prior criminal history and introduced psychiatric evidence suggesting that he would not have par-

ticipated in the crime but for his association with Puiatti. The jury, by an 11–1 vote, recommended imposition of the death penalty for both Puiatti and Glock.

The trial judge, in accordance with the jury recommendation, imposed the death penalty on both appellants, finding no mitigating circumstances and the following three aggravating circumstances: (1) the murder was committed to avoid arrest [section 921.-141(5)(e), Florida Statutes (1983)]; (2) the murder was committed for pecuniary gain [section 921.141(5)(f), Florida Statutes (1983)]; and (3) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification [section 921.141(5)(i), Florida Statutes (1983)].

## DISCUSSION

Petitioner's first two grounds are combined for purposes of discussion. Petitioner argues: (1) the admission of codefendant's confession and statements from their joint confession violated *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and *Cruz v. New York,* 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987); and (2) the trial court erred in not granting a severance at either phase of the proceedings. This Court is not persuaded by Petitioner's arguments.

Petitioner contends that the trial court erred by allowing the jury to hear the codefendant's confession, with a limiting instruction, and the joint confession. Petitioner argues that despite the "interlocking" nature of the statements, their use at trial was in violation of his Sixth Amendment right to confrontation.

■ As a starting point, the United States Supreme Court has held that an accomplice's confession that incriminates another defendant is presumptively unreliable. *Douglas v. Alabama,* 380 U.S. 415, 85

---

1. Thus, both individual confessions were admitted at trial as evidence against their makers. Concurrently, the jury received a limiting in-

struction not to use the confessions as evidence of either *co-defendants'* guilt.

**1030**

S.Ct. 1074, 13 L.Ed.2d 934 (1965). However, it is equally important to note that the United States Supreme Court has held that this presumption is rebuttable under certain circumstances. *Lee v. Illinois,* 476 U.S. 530 at 543, 106 S.Ct. 2056 at 2063, 90 L.Ed.2d 514 (1986).

Even Justice Harlan, who was generally adverse to what he regarded as an expansive reading of the Confrontation right, stated that he "would be prepared to hold as a matter of due process that a confession of an accomplice resulting from formal police interrogation cannot be introduced as evidence of the guilt of an accused, *absent some circumstances indicating authorization or adoption.*" *Lee supra* at 541 [106 S.Ct. at 2062] [quoting *Dutton v. Evans,* 400 U.S. 74, 98, 91 S.Ct. 210, 224, 27 L.Ed.2d 213 (1970)].

■ This Court finds that the type of circumstances referred to by Justice Harlan in his concurring opinion in *Dutton* are present in the case at bar. These circumstances, described herein, reflect an indicia of reliability which properly permitted the introduction of the statements at trial.

At the joint confession of Petitioner Glock and Codefendant Puiatti, both men related the events leading up to and including the murder. While it is true that the bulk of the statements at the confession were made by Puiatti, Petitioner Glock did not sit by idly. In fact, the record shows that rather than sitting in silent agreement, Glock made every effort to enhance and correct even the most minor details related to the authorities by Puiatti.

For example, some of the interjections made by Glock include the exact time of day when the events began; a specific identification of the shopping stores surrounding the scene of the abduction; and specific additions to Puiatti's physical description of the victim. These interjections were made when it appeared that Puiatti might have forgotten specific details. More importantly, it was Glock who related the part of the story describing the firing of the first shots and the return of the two men to make a second "pass" at the victim. Glock also

stated that it was he who noticed that the victim was still standing after this second melee. Finally, it was Glock who stated that he fired the final shot which caused the victim to fall over.

Thus, a review of the record reveals two very important aspects of the three confessions. First, the joint confession disposed of any discrepancy between the individual confessions concerning the identity of the defendant whose idea it was to return to kill the victim and the identity of the defendant who fired the first shot. Second, a review of the joint statement indicates that Petitioner had ample opportunity to make any corrections that he felt were necessary to ensure the accuracy of the statement. As illustrated above, Petitioner did in fact make use of the opportunity to revise the statement.

By actively participating in the joint statement, Glock impliedly authorized and/or adopted the incriminating statements made by Puiatti. During the joint confession, the defendants agreed that it had been Petitioner who initially decided that they should shoot the victim. The joint confession, therefore, corroborated and supported Puiatti's individual confession in which he stated that the shooting was Petitioner's idea.

In *Cruz v. New York,* 481 U.S. 186, 194–95, 107 S.Ct. 1714, 1719, 95 L.Ed.2d 162 (1987) the U.S. Supreme Court held:

[W]here a non-testifying codefendant's confession incriminating the defendant is *not directly admissible,* See *Lee supra,* the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him. Of course, the defendant's confession may be considered at trial in assessing whether his codefendant's statements are supported by sufficient "indicia of reliability" to be *directly* admissible (assuming the "unavailability" of the codefendant) despite the lack of opportunity for cross examination, *Lee, supra* [476 U.S.] at 543–44 [106 S.Ct. at 2063–64] and may be considered on appeal in assessing

whether any Confrontation Clause evaluation is harmless. (citation omitted) (emphasis added).

The joint confession represents an adoption and/or authorization by Petitioner of the statements contained in that confession which implicate Petitioner. The inconsistencies which existed between the codefendants' individual confessions, namely those regarding the aspects of premeditation and role in the offense, are resolved by the joint confession. Therefore, there exists sufficient indicia of reliability to allow Puiatti's individual confession to be introduced into evidence directly against Petitioner. The likelihood that the jury will not compartmentalize the confessions is irrelevant when the confessions would be independently admissible against the codefendant. Furthermore, the statements made by Puiatti in the joint confession were directly admissible against Petitioner because of Petitioner's adoption and/or authorization of that statement. Finally, because of the accompanying indicia of reliability provided by Glock's adoption of the joint confession, any error caused by the admission of Puiatti's individual confession with a limiting instruction was harmless.

For the reasons stated above, the trial court did not err by allowing the prosecution to use the three confessions in the manner in which they were used. Nor was there any error committed by the trial judge when he denied Petitioner's Motions to Sever.

In his third ground, Petitioner argues: (3) Glock's counsel was ineffective at the guilt and penalty phases of the trial.

The test for determining ineffective assistance of counsel was promulgated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test has two prongs, the first of which is whether counsel's performance was deficient. In this sense, deficiency requires that counsel "made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687, 104 S.Ct. at 2064. The second prong requires the petitioner to demonstrate that the deficient performance actu-

ally prejudiced the defense. Additionally, counsel's performance should be reviewed under a reasonable standard in light of the prevailing norms and in consideration of all of the circumstances of the individual case. *Id.* at 688, 104 S.Ct. at 2064.

The *Strickland* test creates a strong presumption that a trial counsel's decisions do not constitute ineffective assistance. Petitioner can establish ineffective assistance of counsel only by showing that trial counsel's errors were so serious that they deprived the defendant of a fair trial, a trial whose result is reliable. *Id.* at 668, 104 S.Ct. at 2052. Petitioner must also show that but for trial counsel's errors there is a reasonable probability that the results of the trial would have been different. *Id.* at 694, 104 S.Ct. at 2068.

This Court finds that the record in this case does not support a claim of ineffective assistance of counsel. The errors which Petitioner raises do not rise to such a level that this court could conclude that Petitioner's trial counsel failed to provide the type of assistance guaranteed by the Sixth Amendment of the Constitution. Petitioner is entitled to a fair trial, not a perfect one. *Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953).

This Court has carefully considered each of Petitioner's remaining claims and finds no merit sufficient to serve as a basis for habeas corpus relief. Accordingly, it is

ORDERED that the Petition for Writ of Habeas Corpus be denied and dismissed with prejudice. Furthermore, the Motion for Evidentiary Hearing is denied.

DONE AND ORDERED.