UNITED STATES of America,

v.

Amy L. LAFFERTY, a/k/a Amy L. Lowery, Defendant.

Criminal No. 04–07–02J.

United States District Court, W.D. Pennsylvania.

Sept. 21, 2005.

---

**502**

John J. Valkovci, Jr., Johnstown, PA, for United States of America.

Marketa Sims, Federal Public Defender's Office, Pittsburgh, PA, for Defendant.

### MEMORANDUM OPINION and ORDER OF COURT

GIBSON, District Judge.

This matter comes before the Court on the Government's Motion to Reconsider (Document No. 71).

The Government challenges the Court's Memorandum Opinion and Order of Court of June 6, 2005 (Document No. 67) which can be found at *United States v. Lafferty*, 372 F.Supp.2d 446 (W.D.Pa.2005)(hereinafter *"Lafferty I"*) concerning the analysis and conclusions as to only the Sixth Amendment issues therein. For a rendering of the operative findings of fact, the reader is referred to *Lafferty I*.

In the present motion, the Government first argues that the statements of Co–Defendant, David Mitchell (hereinafter "Mitchell"), the co-defendant, and the Defendant which were made during the "second" police interview of January 15, 2003 of these two individuals should be classified as a joint statement, which would be equally admissible against the Defendant as it would have been against Mitchell had he proceeded to trial in this matter.[1] The

Government notes that in paragraphs 33 through 45 of the Findings of Fact in *Lafferty I*, the Court refers to the Defendant and Mitchell several times using plural pronouns and conjunctive words but analyzed all of the statements of January 15, 2003 by both the Defendant and Mitchell separately, not jointly, thus "creat[ing] an internal tension within the Court's Opinion." Government's Motion, p. 4, n. 3. The Government offers that by the fact the Defendant and Mitchell were interviewed together, they "presented themselves to the officers as a single, combined unit, not as two separate individuals." Government's Motion, p. 5. The Government goes on to support its argument noting that the Defendant and Mitchell were engaged in a "boyfriend/girlfriend relationship" at the time, they "were advised of their rights together as a unit" and sat "side-by-side and both were interviewed by the same officers, at the same time, about the same criminal episode." Government's Motion, pp. 5–6. Finally, the Government also highlights the fact that both answered questions: "Lafferty further participated in the interview by correcting or explaining answers given by Mitchell, and by nodding her head affirmatively when Mitchell gave other answers." Government's Motion, p. 6.

In suggesting a possible framework for reviewing these facts in the case *sub judice*, the Government offers a seven point analysis to determine if the Defendant's actions are to be considered "joint" with the actions of Mitchell:

a) did the defendants share some common interest or liability relative to the interview;

---

1. Mitchell plead guilty to violations found in 18 U.S.C. §§ 922(u), 924(i)(1) and 2(a) and was sentenced to 96 months imprisonment and three years of supervised release on April 26, 2005.

b) did the defendants or the officers request that the defendants be interviewed together;

c) did the defendants present themselves as a single unit or as separate individuals;

d) were the defendants *Mirandized* together;

e) were the defendants interviewed at the same time and place and by the same officer;

f) were the questions posed to the defendants together or were the defendants addressed individually; and

g) did both defendants participate in the interview and the nature and extent of the participation.

Government's Motion, p. 5, n. 4.

Beyond being a joint statement, the Government also argues that this joint statement should be admissible against the Defendant or Mitchell pursuant to Federal Rule of Evidence (hereinafter "F.R.E.")801(d)(2)(A). Government's Motion, p. 7. The Government cites the case of *Glock v. Dugger,* 752 F.Supp. 1027 (M.D.Fl.1990) in support of this proposition.

■ The Court denies the Government's motion on each of these arguments. The Court will not enter into a new and separate analysis using the seven factors for determining if a statement is "joint" as proposed by the Government. Clearly, if the statements of Mitchell and Defendant made in the "second" interview on January 15, 2003 were considered a unified, joint statement/joint confession, the Government would not have to contend with producing Mitchell for live testimony in order to satisfy the Sixth Amendment because Mitchell's statements would also be considered the Defendant's statements, which could be introduced against her at trial under F.R.E. 801(d)(2)(A). *See infra,* p.

12. However, the Court does not view the statements made at the "second" interview of January 15, 2003 to be a joint statement/joint confession of the Defendant and Mitchell.

The Court has previously found that the statements of Mitchell were adoptive statements of the Defendant as it was skeptical of the existence of a "joint confession" or a "joint statement." Thus, the Court did not explicitly rule as to the existence of a joint confession/joint statement in its Conclusions of Law in *Lafferty I:*

36. As to the Government's characterization of the statements given by Mitchell and the Defendant, the Court notes that there is very little guidance in the law regarding "joint confessions," specifically the definition thereof, and also notes that those "joint confessions" revealed by the Court's research almost exclusively concern confessions made by two or more individuals that are documented in writing. *See e.g., Reck v. Pate,* 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *U.S. ex rel. Kern v. Maroney,* 275 F.Supp. 435 (W.D.Pa. 1967).

37. However, because the Defendant had properly waived her *Miranda* rights by partaking in the second interview of January 15, 2003, the Defendant's *silence* and *failure to deny statements made by Mitchell* during the second interview make the statements made by Mitchell adoptive admissions by the Defendant pursuant to F.R.E. 801(d)(2)(B) as an innocent defendant would have responded in order to deny the statements made

rather than acquiescing in such statements by remaining silent after hearing and understanding those statements. *See U.S. v. Robinson,* 275 F.3d 371 (4th Cir.2001). *Cf. U.S. v. Ghiz,* 491 F.2d 599, 600 (4th Cir.1974).[4]

38. In conclusion, Mitchell's statements at the second interview of January 15, 2003, which have been found to be adoptive admissions of Defendant, are not precluded from admission at trial under the Fourth and Fifth Amendments; however, the issue of the admissibility of those statements under the Sixth Amendment will be addressed.

39. The *statements* (as distinguished from her adoptive admissions) made by the Defendant are in and of themselves her admissions and may be admitted against her at trial in this matter.

[4] The Court takes note of the fact that the Defendant and Mitchell had two private discussions prior to beginning the second interview of January 15, 2003 and the substance of these discussions are unknown; if it could be proven that coercion by Mitchell as influenced by law enforcement or law enforcement coercion directly played any role in the Defendant's partaking in the second interview, such coercion could possibly destroy the admissibility of the adoptive admissions of the Defendant. There is nothing present in the record to suggest such coercion in the case *sub judice* and therefore, the Court has not addressed it.

*Lafferty I,* 372 F.Supp.2d 446, 459–460 (W.D.Pa.2005).

■ The Court finds, as a conclusion of law, that the statements made by Mitchell and Defendant in the second interview of January 15, 2003, do not constitute a "joint statement" or a "joint confession." The Court reaches this conclusion based upon the logic that a statement of any kind from a party, which would include a confession from a criminal defendant, is one made by the party herself.[2] In order for a statement to be considered a joint statement, thus indicating that more than one person or entity is making the same statement together, without disagreement as to its content, meaning and purpose, the makers of the joint statement must manifest their intent to make such statement their own, as a collective, without dissent.

As mentioned in the Court's previous opinion, the Court's research revealed only three cases even mentioning the idea of a joint statement or a joint confession, all of which were captured in written form. The Court finds that joint statements or joint confessions are most easily found in a written medium where the statement makers can manifest their intent, as a collective, to make a statement by signing a written memorialization of the statement. That is not to say that the Court could not find a statement to be a joint statement or a joint confession if it was made in oral form, but the Court believes that an agreement concerning the contents of the entire statement by the makers of the statement would need to be clearly manifested as well.

Considering the factors offered by the Government, the Court finds most of them to be without any true bearing upon the issue of whether a statement is to be considered a joint statement. The Court can envision a situation where co-defendants request to be present in the same room, are *Mirandized* together, charged with the same crimes from the same alleged criminal event, have an alleged "criminal" relationship in addition to an intimate or famil-

2. The Court views a confession as a type of "statement" and a joint confession as one type of "joint statement". The Court will use these terms interchangeably as the type of statement the Court is evaluating is a confession.

ial relationship, are asked questions by the same law enforcement officers at the same time with both participating in the answering of questions, but all of these circumstances still not resulting in a joint statement. For example, circumstances could exist where two co-defendants request to be interviewed at the same time, in the same room, by the same law enforcement officers concerning the same alleged criminal event that both co-defendants are charged with having committed. Both defendants have waived their Fifth Amendment right to remain silent and their Sixth Amendment right to legal counsel. One defendant describes the entire alleged criminal event implicating himself and his co-defendant. The co-defendant sits and listens to the statement without saying a word to correct, dispute, object or add to the statement as given. Can the statement be considered the co-defendant's own statement? The Court believes in this situation that the waiver of Fifth Amendment rights by the silent defendant and his failure to object to the statement which he hears given by his co-defendant, which implicated both defendants in the crime, would become an adoptive admission under the F.R.E. 801(d)(2)(B). By its nature in being adopted, the statement does not originate from that silent co-defendant and is not a joint statement, but is made his own statement as a result of his presence and his inaction.

What the Government is seeking in the present Motion is the classification of the statements of the "second" interview of January 15, 2003 to be the original statements of both Mitchell and the Defendant. The Court cannot agree with such a view. The Court has already found that the statements of Mitchell, which the Defendant heard and with regard to which she remained silent, were "adopted" by the Defendant pursuant to F.R.E. 801(d)(2)(B) and are already admissible at trial if the

Government produces Mitchell to testify as to such statements and also possibly to testify as to the circumstances surrounding the Defendant's adoption of these statements. However, absent a written statement signed by both of the Co–Defendants to the same alleged crime or, alternatively, an oral statement in which both Co–Defendants concur in all of the statements given by the other Co–Defendant to law enforcement, the Court believes that a joint confession would not exist.

The Court will begin its analysis with the definition of "joint," which reads: "**1.** (Of a thing) common to or shared by two or more persons or entities <joint bank account>. **2.** (Of a person or entity) combined, united, or sharing with another <joint heirs>." *Black's Law Dictionary,* 854 (8th ed.2004). The definition of "joint" requires that there must be unity or commonality for a subject in question to be considered "joint." The problem with the Government's argument in the case *sub judice,* and the issue which the Court views as the *sine qua non* of a "joint statement," is the need for proof that the statement in question is common in all aspects among the parties making the "joint statement." If there exists some doubt as to the commonality of the statement, how can the statement be considered given in unity by co-defendants? This question is inherently factual in nature and therefore specific to the facts presented to a court.

The statement in question in the case *sub judice* is alleged to be a joint statement because of the factor, among others, that the Defendant corrected or agreed with some of the answers of Mitchell as well as offered her own answers. *Lafferty I* at 454. It is also argued that the Defendant physically nodded her head in agreement to Mitchell's responses, but these actions as they related to specific state-

ments by Mitchell were not recorded by law · enforcement. *Id.* Apparently, the Government would have the Court engage in analysis of each defendant's participation in the answering of questions and the making of statements to help determine if a statement is "joint" in every case where the existence of a joint statement is an issue. The Court cannot endorse such a relativistic approach. Using this as a factor in determining if a statement is "joint" would cause the Court to make a factual determination based upon a "cold record" of a written transcript or taped recorded statement as to who dominated the making of the statement, if it was participated in evenly or whether a co-defendant's level of involvement as reflected in the record would establish a "joint statement". How is the Court to establish such things-by counting the words and sentences spoken by each of the Defendants? Certainly, the Government discourages such a practice when noting in its Motion that the Court made a finding of fact that "Mitchell answered most of the questions asked of the two defendants." Government's Motion, p. 5, n. 4. The Court agrees.

■ The fact that Mitchell answered most of the questions is not determinative of whether a statement is joint. Relying on such a factor solely or along with other factors adds a relativistic element to determination whether a statement is a joint statement. In this area of criminal law, it is the Court's view that the admission of a statement into evidence at trial against a criminal defendant should not be made based upon relativistic terms. If a defen-

dant waived her right to remain silent, waived her right to an attorney and made a statement in her own words, oral or written, such statement may be used in a court of law. However, to analyze a situation like the one in the case *sub judice,* and find that the Defendant waived her right to remain silent, waived her right to an attorney, and, if you consider the fact that she sat next to her co-defendant/boyfriend while he orally implicated both himself and her in response to questions put to both of them and she remained silent as to some of his answers, corrected some of his answers, disagreed with some of his other answers and affirmatively nodded in response to some unknown number of answers, how can *all* of his statements also be considered her own statements. Such a balancing of factors treads on dangerous ground in that it appears to the Court as a foisting of a incriminating statement upon a criminal co-defendant based upon the relatively wide discretion inherent in a judicial balancing analysis.[3] This does not appear to be acceptable under our precedents of constitutional criminal law. If the Government wishes to take a joint statement from co-defendants, the Court believes the only manner in which such a statement could be considered a "joint confession" is through the factual establishment of each co-defendant's clear approval of the statement in writing or orally as to the entire statement sought to be admitted, without conditions or objections thereto. Certainly, the Government is able to meet this burden but it was not met in this case.

---

**3.** The Court notes a differentiation between such an analysis and the analysis as to whether a statement is an adoptive admission. Admission of adoptive statements into evidence is based upon a finding of preponderance of the evidence. Specifically, a court preliminarily determines if sufficient evidence exists to establish an adoptive admission under F.R.E. 104, and then the jury makes the final determination as to the existence of an adoptive admission. WEINSTEIN'S FEDERAL EVIDENCE § 801.31[2] (Joseph M. McLaughlin ed., 2d ed.2005).

The Government cited to only one case in this part of its argument: *Glock v. Dugger*, 752 F.Supp. 1027 (M.D.Fl.1990). In *Glock*, two co-defendants were arrested for murder, kidnaping and robbery and gave separate confessions implicating the other, but subsequently gave a joint confession which resolved the discrepancies between the individual confessions. *Glock* at 1029. The co-defendants did not challenge the introduction of the joint confession at the time of trial, but only challenged the introduction of the "individual confessions." *Id.* Most of the statements were made by Glock's co-defendant, Puiatti, and the court did make a factual evaluation of the joint confession in making its conclusion. *Glock* at 1030. In *Glock*, the court concluded after an evaluation of the precedent regarding the right to confrontation under the Sixth Amendment in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), and *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987) that the joint confession established "an adoption and/or authorization by [Glock] of the statements contained in that confession which implicate [Glock]," and as such, "there exist[ed] sufficient indicia of reliability to allow Puiatti's individual confession to be introduced into evidence directly against [Glock]." *Glock* at 1031. In *Glock*, the court also concluded that Puiatti's statements made "in the joint confession were directly admissible against [Glock] because of [Glock's] adoption and/or authorization of that statement." *Glock* at 1031.

Upon further review of the *Glock* matter, specifically its related cases, the Court focused upon certain facts that it believes were pivotal to the *Glock* court in evaluating whether the statement was a joint statement. The joint confession in *Glock* was in fact not objected to by the defendants, *Glock* at 1029; *Puiatti v. Florida*, 495 So.2d 128, 129 (Fla.1986); the joint confession was signed by both parties, *Puiatti v. Florida*, 521 So.2d 1106, 1107 (Fla.1988); and the joint confession was taken by a court reporter and "[a]t the conclusion of the joint statement, both men stated that they were in 'full agreement with each other as to the [joint] statement ... [and] that the incident came down exactly that way.' " *Glock v. Singletary*, 36 F.3d 1014, 1017–1018, *vacated, Glock v. Singletary*, 51 F.3d 942 (11th Cir.1995). Taking into account the circumstances in *Glock*, this Court understands why the *Glock* court concluded that a joint confession existed considering that both co-defendants appeared to have orally and in written form agreed to the confession's contents as stated to a court reporter. Such circumstances illuminate what the Court feels is the *sine qua non* for establishing the existence of a joint statement: a clear agreement (either orally or in writing) between two or more co-defendants that one statement (oral or written), as made, is to be the one complete and correct statement by such co-defendants, without any objection or addition to be made to its contents.

The Court also recognizes that such joint statements can also easily be considered adoptive admissions under the F.R.E. 801(d)(2)(B) by the fact that the party is "manifest[ing] an adoption or belief in [the statement's] truth" by oral and/or written agreement. F.R.E. 801(d)(2)(B). Adoption of a statement can be "manifested" through different means, including "language, conduct, or silence." WEINSTEIN'S FEDERAL EVIDENCE § 801.31[3][a] (Joseph M. McLaughlin ed., 2d ed.2005).

While all such joint statements or joint confessions may be considered

"adoptive admissions" under the Federal Rules of Evidence, the Court does not find that all "adoptive admissions" can qualify as "joint confessions" or "joint statements." This is because the Court views any "joint statement", including an alleged "joint confession" in a criminal matter, as a statement that (1) the content of which is agreed to by the makers of such statement and not in question and (2) the "joint statement" originates from two or more persons who agree the statement is the one statement of its makers. In contrast, an "adoptive admission" does not necessarily originate from more than one person. The existence of two or more persons making a statement makes one statement "joint". However, a joint statement need not be made by the makers of statement *at the same time* to be joint.[4]

Consider the hypothetical of Mr. Sean and Mr. Connor, each being an administrator of a different government agency reviewing the same administrative issue. If Mr. Sean is quoted as saying statement "A" is a correct rendition of a particular matter and two weeks later Mr. Connor states that he believes statement "A" as made by Mr. Sean is correct, an adoptive admission is permitted under F.R.E. 801(d)(2)(B). However, this is not a joint statement. It is only one statement made by one person, but adopted by a second person.

Changing the facts slightly, let us assume Mr. Sean offers statements as to five conclusions as they relate to his agency and Mr. Connor notes his agreement with four of these conclusions, but expresses reservations as to Mr. Sean's fifth conclusion and makes a different conclusion on this fifth issue as it relates to his agency. An adoptive admission by Mr. Connor exists as to only the first four conclusions. No joint statement exists as to the first four conclusions, much less the differing fifth conclusion.

Finally, let us assume that Mr. Sean and Mr. Connor issue one statement, approved by each as the statement of both of their agencies. Now, a joint statement exists as to the two agencies as it is their one statement. The two men are speaking with one voice; there is not one man speaking with the second man later adopting the other man's statement as his own. It is not the situation where Mr. Sean's statement is later "adopted" by Mr. Connor. It is their statement alone, unified, and common to both. The making of a joint statement occurs when one statement is actually made or issued by two or more parties, as opposed to an adoptive admission where one person issues or makes a statement which is adopted by another person. Therefore, a joint statement is the admission of each of the makers of the statement and thus would be admissible under F.R.E. 801(d)(2)(A)[5] as each party's own statement.

In addition, a joint statement inherently, by its nature, is admissible in court as an adoptive admission under F.R.E. 801(d)(2)(B). However, the adoptive admission made by the Defendant of Mitchell's statements in the case *sub judice* is not considered a "joint confession" or "joint statement" because of 1) a lack of evidence demonstrating that

---

**4.** The Court envisions that a joint statement would exist where, for example, a written confession is signed by the first co-defendant one day and signed by the second co-defendant a week later thereby manifesting the necessary intent between co-defendants that the written confession is their joint statement.

**5.** F.R.E. 801(d)(2)(A) reads: "The statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity."

the statement of Mitchell was made on behalf of both Mitchell and Defendant with Defendant's approval as opposed to merely being a statement of Mitchell made in Defendant's presence and, 2) a lack of evidence that the statement encompassed all of the matters the Defendant wished to reveal to authorities, *i.e.*, proof that it was her statement in addition to being Mitchell's statement. Mitchell's statements lack the proof of "authorization", to use the *Glock* court's language, that Mitchell was speaking for himself *and* the Defendant. While the Defendant may have nodded her head in agreement to some of Mitchell's statements, the Court is without evidence as to which statements. Had it been shown that the Defendant nodded her head to each and every answer offered by Mitchell, then evidence of a joint confession would be present. The record lacks any confirmation by the Defendant that Mitchell's statements were in fact also to be considered her own statements as well and that she agreed that the acts that Mitchell recounted were in fact truthfully what happened. While the distinction is a subtle one, it must be respected.

The Court's recognition of this distinction does not make it a difficult task for law enforcement, should they choose to continue to use such dual interrogation methods in the future, to obtain an on-the-record express indication by the parties making the statements, that the statements made by the other party were in fact his or her own statements as well. The case *sub judice* has no record of such express indication, oral or written, that the Defendant authorized Mitchell to speak on her behalf as well as his own. In essence,

the statements of Mitchell were not statements made by two persons, but only statements made by Mitchell. Had the Government produced some definitive evidence establishing that Mitchell was speaking on behalf of both persons and/or that the Defendant agreed to every answer given by Mitchell as if it were her own, the Court would consider Mitchell's statement to be the joint statement of Mitchell and the Defendant. However, there still exists some salvation for the Government in the fact that Mitchell's statements are admissible at trial under the Federal Rules of Evidence as an adoptive admission by the Defendant.[6] The record essentially reveals statements, offered by Mitchell in the presence of Defendant, to which the Defendant did not object.

■ Therefore, the Government is not foreclosed from prosecuting the Defendant because of the distinction between joint statements and adoptive admissions which has been discussed above in great depth. There exists sufficient evidence for the presentation to a jury of the issue of whether an adoptive admission was made by the Defendant. The Court must first clarify its ruling in *Lafferty I* as to the adoptive admissions sought to be used by the Government. The Court stated the following in *Laffery I*:

37. However, because the Defendant had properly waived her Miranda rights by partaking in the second interview of January 15, 2003, the Defendant's silence and failure to deny statements made by Mitchell during the second interview make the statements made by Mitchell adoptive admissions by the Defendant pursuant to F.R.E. 801(d)(2)(B)

---

**6.** As explained later in this Memorandum Opinion, although the statements of Mitchell are admissible at trial under rules of evidence, the Sixth Amendment requires that

whether the statements of Mitchell actually constitute an adoptive admission of Defendant remains a determination which the jury must make.

as an innocent defendant would have responded in order to deny the statements made rather than acquiescing in such statements by remaining silent after hearing and understanding those statements. *See U.S. v. Robinson,* 275 F.3d 371 (4th Cir.2001). *Cf. U.S. v. Ghiz,* 491 F.2d 599, 600 (4th Cir.1974). *Lafferty I,* 372 F.Supp.2d 446, 459 (W.D.Pa.2005)(footnote omitted). The wording used by the Court deserves further clarification. The Court's ruling on this matter specifically is that there exists sufficient evidence to support a jury finding that an adoptive admission exists after considering this preliminary question of admissibility under F.R.E. 104(a). That is to say that the Government has proven by a preponderance of the evidence that the Defendant's "conduct manifested an intent to adopt [Mitchell's] statement." WEINSTEIN'S FEDERAL EVIDENCE § 801.31[2] (Joseph M. McLaughlin ed., 2d ed.2005). However, the final determination as to whether an adoptive admission was made by the Defendant must be left to a jury using the standard of "beyond a reasonable doubt." *Id.* n. 7 (and cases cited therein).

The final issue that must be addressed is whether the presentation of evidence of the Defendant's adoptive admission at trial violates the Defendant's rights under the Confrontation Clause. This issue has presented itself in light of the Court's ruling in *Lafferty I.*

The Third Circuit has never squarely addressed this issue prior to or subsequent to the Supreme Court ruling in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), but has only addressed the right to confrontation *post-Crawford* in matters tangential to the case *sub judice. See United States v. Hendricks, et al.,* 395 F.3d 173, 183–184 (3rd Cir.2005)(finding that conversations by a defendant with a confidential informant are not "testimonial" in nature); and *United States v. Trala,* 386 F.3d 536, 544–545 (3rd Cir.2004)(finding that because statements were not offered for the truth of the matter asserted the statements were admissible because reliability, which is only tested through cross-examination in accordance with *Crawford,* is not in issue). However, two other circuit courts, prior to the *Crawford* decision, concluded that a defendant's adoptive admissions are admissible at trial. *See U.S. v. Allen,* 10 F.3d 405, 413–414 (7th Cir.1993); *U.S. v. Kehoe,* 310 F.3d 579, 591 (8th Cir.2002).[7] Although these cases did not have the benefit of utilizing the enlightenment that resulted from the *Crawford* opinion and did not discuss the issues regarding whether a statement is testimonial or non-testimonial, the Court still finds these cases persuasive.

*Allen* reads in pertinent part:

As for Allen's Sixth Amendment argument, we previously have held that lack of opportunity to cross-examine the declarant of a statement the defendant has adopted as his own does not violate the confrontation clause. *See Rollins,* 862 F.2d at 1297; *accord United States v. Lemonakis,* 485 F.2d 941, 949 (D.C.Cir. 1973). The reason for this is not difficult to understand. An "adoptive admission" is a statement that the defendant has adopted as his own. Thus the defendant himself is, in effect, the declarant. The "witness" against the defendant is the defendant himself, not the actual

---

**7.** Other cases cited by the Government essentially rely upon the state of Sixth Amendment law that existed prior to *Crawford* in that they rely upon the idea that adoptive admissions are one of the firmly rooted hearsay exceptions. In light of *Crawford,* the Court will not rely upon such precedent in analyzing the issues herein.

declarant; there is no violation of the defendant's right to confront the declarant because the defendant only has the right to confront "the witnesses against him." U.S. Const. Amend. VI; *see Rollins,* 862 F.2d at 1297.

*U.S. v. Allen,* 10 F.3d 405, 413 (7th Cir. 1993). For the Court, the logic in *Allen* even after the *Crawford* decision is compelling by the fact that an adoptive admission does become the statement of its adopting declarant. What right would there be, let alone the need, to cross-examine oneself? The adoptive admission is a statement which is known to the person who has adopted it, and, knowing its contents, agreed to make it her own statement. This appears to be one area where a testimonial statement can be admitted against a Defendant without the right to cross-examination.[8] Inherent in Justice Scalia's analysis in the *Crawford* opinion was the idea that the right of confrontation exists as to accusations of third parties implicating a criminal defendant, not a criminal defendant implicating herself. *See Crawford v. Washington,* 541 U.S. 36, 42–60, 124 S.Ct. 1354, 1359–1369, 158 L.Ed.2d 177, 187–197 (2004).

In the case *sub judice,* the Court is evaluating testimonial statements made by Mitchell, a former co-defendant of the Defendant, made during a police interrogation of Mitchell and the Defendant. The testimonial statements of Mitchell are sought to be admitted into evidence at trial for the truth of the matter asserted therein based upon the premise that they are adoptive admissions of the Defendant. The statements in issue are incriminating of the Defendant.

■■ The evidence as previously evaluated by this Court above establishes that there is sufficient evidence to create a jury question as to the existence of an adoptive admission being made by the Defendant with regard to Mitchell's statements. Assuming the jury concludes that the statements of Mitchell are also adoptive admissions of the Defendant, the Sixth Amendment right to confrontation is not violated. This is so because through the adoptive admission, the Defendant has adopted the statement of Mitchell as her own and is thus speaking against herself through the adoptive admission. Does the Sixth Amendment guarantee a defendant the right to cross-examine herself as to her own adoptive admission? The Court does not believe so. The Sixth Amendment guarantees one the right to confront witnesses against oneself, but through an adoptive admission, the Defendant becomes a witness against herself. The right not to be compelled to be a witness against oneself is protected by the Fifth Amendment, not the Sixth Amendment. It has already been established in *Lafferty I* that the Defendant waived her Fifth Amendment rights as to all statements considered to be made by her at the second interview of January 15, 2003, which would include Mitchell's statements if the jury finds that Defendant has made an adoptive admission as to those statements.

Therefore, this matter may proceed to trial so that a jury can determine if adoptive admissions were in fact made by the Defendant as to the statements of Mitchell from the second interview of January 15, 2003. Should the jury determine that the statements of Mitchell were not adopted

---

8. It would appear that the four statements set forth in F.R.E. 801(d)(2)(A) through (D) would be admissible against a criminal defendant consistent with the Sixth Amendment without an opportunity for cross-examination being provided because the nature of these four statements would make them the statements of the criminal defendant. However, the Court today only reaches the right to confrontation relative to F.R.E. 801(d)(2)(B).

by the Defendant, they will not be admissible against the Defendant and the jury will be instructed not to consider Mitchell's statements in their deliberations unless the Government produces Mitchell to testify as to the statements during the trial, thereby fulfilling the requirements of the Sixth Amendment right to confrontation.

An appropriate Order follows.

**AND NOW** this 21st day of September, 2005, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Government's Motion to Reconsider is DENIED IN PART as to the issue of the existence of a joint statement as it is specifically found that the statements of the Defendant and David Mitchell as made to law enforcement authorities during the "second interview" on January 15, 2003 are not a joint statement; IT IS FURTHER ORDERED THAT the Government's Motion to Reconsider is GRANTED IN PART as to the issue of the admission of David Mitchell's statements at trial as adoptive admissions of Defendant under F.R.E. 801(d)(2)(B) as such admission into evidence at the trial in this matter is found not to violate the Defendant's Sixth Amendment right to confrontation, with the jury to make the determination whether such statements are in fact adoptive admissions of Defendant; IT IS FURTHER ORDERED THAT a date for a pretrial conference and a date certain for voir dire and trial in this matter will issue under a separate order.